# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | * | |
| **GLENWOOD THOMAS** *et al.*, | * | |
| **Plaintiffs** | * | |
| **v.** | * | **CIVIL NO.  JKB-11-2479** |
| **MAYOR & CITY COUNCIL** **OF BALTIMORE** | * | |
| | * | |
| **Defendant** | | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## MEMORANDUM

### I.  Background

Glenwood Thomas, Eric Banks, and Lanny Boddy filed this lawsuit against the City of Baltimore, claiming racial and age discrimination.  (Compl., ECF No. 1.)  They alleged their positions were eliminated in the Department of Public Works ("DPW") and new, similar positions were created in the Department of Housing and Community Development ("HCD"), but that they were not hired for the new positions; instead, younger African Americans or Caucasian individuals were hired.  (*Id.* 2.)  Plaintiffs' claims of discrimination have been exhausted, and their suit was timely filed.  (*Id.* ¶¶ 30, 31.)  This case has proceeded through discovery and is now before the Court on the City's motion for summary judgment.  (ECF No. 14.)  Plaintiffs filed exhibits to oppose the motion, but filed no memorandum in response to the motion.  (ECF No. 27.)  The Court has considered these materials and the City's reply (ECF

No. 28), and no hearing is necessary, Local Rule 105.6 (D. Md. 2011).   The motion will be granted.[1]

## II.  Standard for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing predecessor to current Rule 56(a)).   The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).   If sufficient evidence exists for a reasonable jury to render a verdict in favor of the party opposing the motion, then a genuine dispute of material fact is presented and summary judgment should be denied.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).   However, the "mere existence of a scintilla of evidence in support of the [opposing party's] position" is insufficient to defeat a motion for summary judgment.  *Id.* at 252.   The facts themselves, and the inferences to be drawn from the underlying facts, must be viewed in the light most favorable to the opposing party, *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008), who may not rest upon the mere allegations or denials of his pleading but instead must, by affidavit or other evidentiary showing, set out specific facts showing a genuine dispute for trial, Fed. R. Civ. P. 56(c)(1).   Supporting and opposing affidavits are to be made on personal knowledge, contain such facts as would be admissible in evidence, and show affirmatively the competence of the affiant to testify to the matters stated in the affidavit.  Rule 56(c)(4).

---

[1]  The Court has found material in Defendant's Exhibit 2 (ECF No. 14-3) that should have been sealed. The Court's order will direct the Clerk to seal the exhibit.

### III.  Standard for Claims of Employment Discrimination

Counts One and Two, claiming racial and age discrimination in violation of Title VII (42 U.S.C. § 2000e *et seq.*), the Age Discrimination in Employment Act ("ADEA") (29 U.S.C. § 621 *et seq.*), and 42 U.S.C. § 1981, are analyzed in a similar manner.  Disparate treatment in employment on the basis of race is evaluated identically under both Title VII and § 1981.  *See Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 268 n.4 (4th Cir. 2005) (citing *Bryant v. Aiken Reg. Med. Ctrs. Inc.*, 333 F.3d 536, 545 n.3 (4th Cir. 2003)); *Love-Lane v. Martin*, 355 F.3d 766, 786 (4th Cir. 2004).  In addition, the same mechanism used to evaluate the racial discrimination claims is employed in evaluating Plaintiffs' age discrimination claims.  *See Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 513-14 (4th Cir. 2006) (relying upon *McDonnell Douglas* proof scheme in ADEA case).  However, the Supreme Court has clarified that age discrimination must be proven under a "but for" standard, while racial discrimination may be proven under either a "but for" or a mixed-motive standard.  *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 173-78 (2009).  Plaintiffs, who have provided no direct evidence of discriminatory animus under any of these theories, are necessarily proceeding under the burden-shifting scheme of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973).

The equal-protection claim asserted by Plaintiffs in Count Three under 42 U.S.C. § 1983 for alleged racial discrimination is not barred by Title VII, as argued by the City.  *See Booth v. Maryland*, 327 F.3d 377, 382 (4th Cir. 2003).  Instead, it, too, is analyzed under *McDonnell Douglas*'s burden-shifting scheme.  *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 n.1 (1993) (utilizing scheme in § 1983 employment discrimination case).

In their case against the City under their theory of discriminatory layoffs at DPW and failure to rehire at HCD, Plaintiffs may establish a *prima facie* case by proving (1) they were members of a protected class, (2) at the time of their demotions or terminations, they were

qualified for their positions and meeting their employer's legitimate expectations, (3) they were demoted or terminated, and (4) they were replaced by individuals outside of their protected class with comparable qualifications. *See Warch*, 435 F.3d at 513. If Plaintiffs establish their *prima facie* case, then the burden shifts to the employer to produce a legitimate, nondiscriminatory reason for its action. Once the employer has met that burden of production, then the presumption of discrimination under the *prima facie* case goes away and Plaintiffs must prove the employer's proffered justification is pretextual. *Id.* 513-14. This final inquiry "merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981).

## IV. Facts

Plaintiffs are African Americans who were in their mid-fifties at the time of the events in 2009 of which they have complained. (Pls.' Opp'n Ex. 1, 2, 3, Affidavits of Thomas, Banks, and Boddy.) In May 2009, they were informed that they would be laid off from their positions as Environmental Crimes Investigators at DPW effective June 30, 2009. (*Id.*) In 2008 and 2009, the Mayor's "Citi Stat" panel reviewed and monitored the performance of DPW's Environmental Crimes Unit pertaining to illegal dumping and became dissatisfied with its performance. (Def.'s Mot. Summ. J. Ex. 8, Aff. Cunningham, Oct. 12, 2012.) The Citi Stat panel determined that the unit needed to be reorganized, either through abolition of the positions or transfer to another agency. (*Id.*) It was decided that the positions in the DPW's Environmental Crimes Unit would be abolished and its duties would be transferred to HCD, which was already doing similar enforcement work with greater success and better resources. (*Id.*) The positions were transferred on July 1, 2009. (*Id.*)

HCD's Special Investigations Unit incorporates the former work of DPW's Environmental Crimes Unit, and that work comprises approximately 30 percent to 40 percent of

HCD's Special Investigations Unit's enforcement responsibilities. (Pls.' Opp'n Ex. 4, Waugh Dep. 8:1-8, Sept. 4, 2012.) New job specifications, merging those from DPW and HCD, were drawn up for the new positions in HCD. (*Id.* 86:19—89:2.) Although both DPW and HCD had required their respective investigator positions to be Special Enforcement Officers, certified by the Baltimore City Police Department ("BPD"), DPW had not enforced that requirement, and its investigators who were not certified were required to work with BPD police officers to write up and serve criminal summonses and civil citations. (*Id.* 87:13—88:5.) After HCD assumed the functions of DPW's former Environmental Crimes Unit, the police officers were not needed by HCD—which did enforce the certification requirement for its investigators—and they were returned to the street. (*Id.* 67:12—68:9.) The protocol for taking citizens' service requests concerning illegal dumping through the City's 311 call center was also revised to permit more service requests to reach the investigators. (*Id.* 75:13—77:13.) Other recommendations for improvement of the work of the expanded Special Investigations Unit were also made and implemented. (*Id.* 81:17—83:21.)

HCD posted a notice for two Code Enforcement Investigator II positions (three were authorized but one was subject to a hiring freeze), and Plaintiffs applied and were selected, along with other individuals, to interview for the two positions. (Def.'s Mot. Ex. 7, Aff. Hessler, Oct. 12, 2012; Pls.' Opp'n, Waugh Dep. 94:4-14; 99:15-20.) The interview panel consisted of Thomas Waugh, Chief of the Special Investigations Unit, Yvonne Moore-Jackson, and Jeaneen Logan. (Waugh Dep. 109:7-15.) They employed a set of interview questions formulated by Waugh, Jason Hessler, and Nydia Morgan and approved by HCD's human resources department. (Waugh Dep. 107:13—108:8.) Besides Plaintiffs, the panel interviewed Craig Crippen and Shawn Kolego. (Def.'s Mot. Ex. 11, interview forms.) Each panel member assigned a numerical weight to each answer given by each interviewee. (*Id.*) All three panel members

scored Crippen the highest and Kolego the second highest. (*Id.*) Out of the three Plaintiffs, only Boddy met the requirement for Special Enforcement Officer certification; the other two, Thomas and Banks, had criminal records that prevented them from obtaining that certification. (*Id.*) Besides the certification issue, Plaintiffs' answers to the interview questions were deemed, in many instances, deficient and unsatisfactory. (*Id.*; Waugh Dep. 117:20—123:8.) Crippen and Kolego were selected for the two positions. (Waugh Dep. 111:19—112:14.) Crippen is African American (Waugh Dep. 41:13-15); Kolego's race is not a matter of record, but the City has indicated to the Court that he is Caucasian (Def.'s Mot. Supp. Mem. 9). The City has also indicated that Crippen was 38 and Kolego was 31 at the time of the interviews. (*Id.*)

## V. Analysis

Plaintiffs have established their *prima facie* case, but the City has produced evidence of a legitimate reason for its employment decisions affecting Plaintiffs. The burden now shifts back to Plaintiffs to prove that the City's reason was pretextual and that its decisions were premised upon unlawful discrimination. Having reviewed all of the materials submitted by the parties, the Court has found nothing to support Plaintiffs' allegation of discriminatory animus by the City. All three Plaintiffs have provided affidavits that draw into question the basis for the City's performance assessment of the former Environmental Crimes Unit and the wisdom of abolishing the unit, transferring its function to HCD, and reorganizing HCD's Special Investigations Unit to incorporate that function. (Pls.' Opp'n Ex. 1, 2, 3.) But whether the City's decision was wise is not the issue. Employers are granted leeway to make decisions, even arguably bad decisions, affecting its employees as long as their decisions are not founded upon discriminatory intent. *See DeJarnette v. Corning Inc.*, 133 F.3d 293, 298-99 (4th Cir. 1998) (sole concern in employment discrimination case is whether employer's decision was based on discriminatory

6

reason; not court's province to decide whether reason was wise, fair, or correct as long as was true reason for decision).

## VI.  Conclusion

Plaintiffs have failed to carry their burden of proof and the City is entitled to summary judgment.  A separate order will issue.

DATED this <u>16th</u> day of April, 2013.

BY THE COURT:

_____/s/_____
James K. Bredar
United States District Judge